Thank you very much, Your Honors. My name is Terry Koppel. I'm appearing here on behalf of the appellant, J.B. Scott. I would like to reserve maybe three minutes of my time. Okay, and we'll try to help you, but you keep track of the time. Okay, good. I want to dive into what is, from our perspective, the key error that the trial court committed when it ruled on summary judgment in favor of the Forest Service. As the court is aware, the district court ruled that even though there was a material defect in Forrester DeTore's letter rejecting our application for the special use permit, that failure was cured by the letter of Supervisor Kohlmeier, who basically stated that the Forrester did, in fact, do an evaluation of this permit and found that we did not meet the screening criteria for the application. The reason that is a failure is that Supervisor Kohlmeier's letter to us, advising us that the application was not going to be granted, in her letter she stated that she had no jurisdiction to review the matter, that she had no jurisdiction to review it on its merits. So that is the first error that we have alleged that the trial court committed in ruling on the application, was that somehow or other this defect in the original review was cured by Supervisor Kohlmeier's letter. And if you look at her letter, you'll see that in there that basically what she did was she just dismissed our appeal not on the merits. Of course, also in the Forest Service's answer to our complaint, you'll see where they admit that they did not review that on the merits at her level. So to begin with, the curing that the district court relied upon from the defective letter rejecting our application was from an administrative officer who basically, on her own admission, did not have jurisdiction. A more fundamental flaw, though, is the district court ruled that her letter stated that the line officer who reviewed the application, who was Forrester DeTore, determined that we did not substantively meet the first level screening criteria for the application to be granted. She basically said you did what you were entitled to, which was a review of the application, even though Forrester DeTore, in his letter to us, said he was returning it without a review. The reason that is error is because we have in the administrative record Forrester DeTore's analysis that he did of our application, which is exactly the opposite of what Supervisor Kohlmeyer was saying in her letter to us dismissing our appeal. Counsel, would you please point me to the language in the letter from Ms. Kohlmeyer that says that she has no jurisdiction over the Yes, it's on page 41 of the Supplemental Extract of Records. On there? That's page 2 of her letter. Right. And you'll see the first, second, third, fourth paragraph. It says, I am dismissing this appeal because Mr. Scott does not meet the criteria to qualify as a party to an appeal. Accordingly, Mr. Scott is not entitled to appeal and the appeal must be dismissed. But that doesn't say she doesn't have jurisdiction over it. It says he's not entitled to an appeal. That's right. And that was dismissed on a procedural ground. She was not substantively reviewing our application. And the government admits that. That's a different thing than saying when you say you don't have jurisdiction over something, it means you don't have any authority to act on it at all. Other than to dismiss it. Well, I suppose you have authority to say I don't have authority to rule on it. Then I think you're right, Your Honor. But what I was getting at was that she herself substantively did not review or give us the review that we felt that we were entitled to. Well, but alternatively you can say he's not entitled to an appeal. But in the event I got to the merits, here's the merits. What's wrong with that? Exactly. But she didn't say that. She said, I'm going to tell you what Forrester DeTore, who was the line officer with jurisdiction, if you will, what he did in reviewing your application that shows that you did get reviewed. She didn't say I'm going to tell you what he did. She said I would nonetheless explain why he made the determination. That's correct. That's what she said. She's not purporting to speak his words, but she's saying here are the reasons that he made the determination that he made. What's wrong with that? Well, because she's absolutely wrong based upon the record. Because we have his report in the record. We have what he did. And he ruled that we complied with all of the four criteria. Except the first one.  The reason this whole dispute arose was because we filed an application to do heliskiing, and there was another application pending at the same time. My client gets a letter back from the Forest Service saying, we cannot even process your application because it violates a closure order. It's illegal for you to heliskie in this forest. It wasn't illegal. There was an exception if you got the permit. That was the exception. But I'm just saying that's the discrepancy that the district court was talking about. That was a misstatement, even though it was illegal under the closure order. If you got a permit, you could operate. That's right. And we, in essence, won on that argument because we pointed out to the district court to send back our application without processing it and say, we don't allow this. And then we look over to the side, and we see on the same day that Forrester DeTore is saying that we can't do it. They grant another application where the Forest Service is very laudatory about heliskiing and never mentioned the closure order. This is the Sun Valley application. This is the Sun Valley helicopter one. And I think that's what troubled the district court. So assuming we agree with you that you can do heliskiing despite the closure order if you get a permit, assuming without deciding for the moment, what remedy do you get? We send it back for processing under the permit application? At a minimum, that's what this court should do. Is there anything at a maximum, or is that just what you want? I would say the maximum would be we would want a declaration of the court that in fact the recreational heliskiing does not require a permit, which gets us into the whole closure order issue. How can we make that determination that no permit is required under the record we have here? Well, because we have two arguments that address that. One is that it's not a commercial use. My client is not engaged in the commercial use the way the trial court ruled because we think the trial court just simply erred in saying that my client flying his private helicopter to heliskie was the principal activity was one for the sale of a good or service. Yeah, on the other hand, if we agree with you that it's not a commercial use, you're still subject to the closure order, and that requires a permit. Exactly. So we're back where we were with what you say is the minimum. Exactly. Or we have to deal with what's the validity of the closure order. Because you see, all my client did was simply file a complaint. How can you challenge the closure order at this point? Well, in count three of our complaint, we did challenge the closure order. And we stated that the closure order was not adopted in accordance with law. And that gets me into the closure order argument. That's why we have to address it because you're right. If there is a valid closure order, then we're still back to the permitting process where our application would be entitled. I was puzzled by the following sentence in your brief on page 19. You write, I don't read the district court as having said that. No. What the district court said or wrote was there is a valid closure order, but in order to do it, therefore, you need a permit. No, then you're right. If we said that, then that. It's not if you said that. I just read it to you. Then that's an error. No, the district court ruled that there was a closure order, a valid one, in effect. And rejected our argument about the fact. And what's your argument other than the fact that the district judge held it was invalid? That's not right. What's your argument that the closure order is invalid? Okay, the argument with regard to that was is that the actual closure order itself that's applicable to this matter, which ends in the last three digits of 009, does not itself explicitly prohibit the landing of aircraft in the national forest. The prior closure order before the one that was in place when we filed our application explicitly prohibited it. And that is in the extract of record. So how does that make it invalid? Because it was a little more lenient. So how does that make it invalid? The prior one prohibited the landing of aircraft. Ours, when they adopted the new one, took that out. They just took it out. And my point was. You could read that one or two ways. It just gave them more discretion. But in any event, did you challenge that administratively? Wouldn't you have to challenge the closure order administratively before you could challenge it in court? Well, administratively, basically the Forest Service said we had no administrative ability to challenge it. Did you specifically address the closure order at any point in your administrative appeals? Yes. And that was the argument that the trial court adopted, which was that it was circular, that it made no sense that we couldn't. The validity of the closure order, did you specifically address that in your administrative appeals? We did in the complaint to the district court. Oh. I'm asking you about the administrative proceedings. Did you specifically address the validity of the closure order? When we appealed it to Supervisor Kohlmeier, I did not believe that we challenged it under the grounds of NEPA or anything of that nature because we didn't have the administrative record. Well, why wouldn't that preclude you now from challenging it in federal court? Well, because her dismissal, in essence, procedurally, because she did not feel she had the authority to review it, was not on the merits. All we were asking for was we couldn't believe that the forest officer would grant a hellisking permit on one hand and deny us on the other, so we went to the supervisor and said, we don't understand why the Forest Service is giving it to one person with no problems and denying us. Then she said, I'm not reviewing what my line officer did. I'm dismissing it, not on the merits. But then she said, now I'm going to explain to you in my dismissal letter. But he should have said. He didn't say, but I'm going to tell you what he should have said. That's right. That's exactly what happened. He didn't explain to you what the deficiencies are. So it doesn't matter whether he said it or she said it if it's all one administrative process. Well, I think it does, because when you look at the record, we've never had a review of our application on the merits. The line officer, Forrester DeTore, said, I'm not processing it. We go to the boss and say, we can't believe that we don't even get processed when somebody else just got theirs. She says, I'm dismissing it. Then she says, oh, by the way, this is what he really meant. Here's why he didn't process it. That's right. But in the administrative record, we have his processing notes where he says exactly the opposite. Let me ask you this, though. Assume for the moment that the supervisor. Supervisor Kohlmeyer. Ms. Kohlmeyer is permitted to construe the denial or the refusal to process in the way that she did. Assume that that was made by the initial officer who refused to process. Is she wrong? And why? Yes, she's wrong because the special use permit screening guidelines that she said we didn't comply with based on the analysis of the line Forrester, the line officer, we have from the administrative record on page 63 of the supplemental extract, we have his worksheet. No, no. That's not my question. Okay. I'm sorry. Assume that he filled out the worksheet or Ms. Frost filled out the worksheet the way that Kohlmeyer would have filled it out. Assume that that's then what she's looking at, what Kohlmeyer's looking at. Right. Is she wrong then to say, nonetheless, the officer was right to refuse to process? If I understand the question right, I think that she was probably right. That if he would have filled out the application the way she wanted him to fill out the application, that is, finding that we didn't comply with her criteria, then we would have had an appropriate evaluation. And then there was no appeal? Well, we would still – And then you lose. Well, no, no, because we remember there was an identical application to do the identical thing with another applicant who they found met all of the criteria. That's a different issue. That's a different issue whether or not there was a violation of equal protection or it was arbitrary in terms of denying one and granting the other. But that's a different issue than whether or not there was an adequate explanation for deny your special permit application. And maybe I don't understand the question. Maybe you don't understand the question. Why don't we do this? Let's hear from the government. Your time's almost expired. Then we'll give you a chance to respond, and that may help structure some of your answers. Okay. Thank you. May it please the Court. I'm Elizabeth Ann Peterson here for the Federal Appellees. The question here, of course, is whether the Forest Service acted arbitrarily in denying the request from Mr. Scott to land his helicopter in the Fairfield Ranger District of the Sawtooth National Forest, which is a non-motorized area closed to all motorized vehicular traffic. Unless there's a permit, as, for example, to the Sun Valley people. Correct, Your Honor. Sun Valley is a guiding operation that has been providing public helicopter skiing opportunities on the Sawtooth National Forest for decades. Its original permit was in 1976. Operations have been going on since 1966, according to the record here. But I just wanted to make sure we understood the nature of the closure. It's not closed altogether. That's correct, Your Honor. Permits can be granted. There are exemptions from the closure, and Sun Valley Heliski's permit is one of those exempted. Let me ask you this. Go ahead. We know there's a 2003 closure order, but you said that Sun Valley has been in existence since the 70s. So was Sun Valley grandfathered in, in terms of being able to operate? Sun Valley has been operating continuously and therefore has been treated as a party that has a permit explicitly exempting it from the closure since the closure order went into effect in the 90s. So it has been exempt throughout, yes. But it's been recently then reissued a permit. That is correct, Your Honor. Its permit's expired. It applied for another permit or perhaps a continuation of the permit. I'm not sure that phraseology matters. And was granted that permit, was it in 2007? That is correct, Your Honor. There have been renewals at five-year intervals of Sun Valley's permit. So the Forest Service had it within its power in 2007 to say we're not going to renew the permit. That is correct, Your Honor. And its explanation for why it decided not to do that is in the record here. No, for Sun Valley. For Sun Valley, correct. Sun Valley provides a number of services that Mr. Scott did not, at least in his proposal, offer, nor are those services needed any longer now that Sun Valley is providing them, including snow condition, avalanche forecasting, lost skier search and rescue services. In other words, the conditions on its permit are not only to mitigate the negative impacts of landing helicopters in the National Forest, which would, of course, also be associated with additional helicopter landings, but also to provide public services, including the provision of this activity. Let me ask you this. One of the arguments that Mr. Scott is making is that he is engaged in noncommercial recreational activity, and therefore he doesn't even need a permit. That puts to one side for the moment the closure order, which I'll put to one side. It's relevant, but for the moment. I have trouble understanding, and the Forest Service seems to say that he's engaged, and so do you, that he's engaged in commercial activity. I have trouble with that analysis because he's not a company providing services to somebody else. He's just coming in, and he has somebody who he pays that is his pilot. But on your theory, it would seem to me that someone who has a driver who brings him into the National Forest is also engaged in commercial activity. How do you distinguish someone who is driven into the National Forest by his hired driver who drives him around town because he can't drive? Why is that not commercial if this is so on? Do you understand the question? I understand the question, Your Honor. There are no permits required for driving in the forest. So the analogy doesn't work entirely. No, that is not my question. My question is how do you define commercial such that what Mr. Scott wants to do is commercial if it's not commercial when someone has a paid driver bringing him into the forest? The question here, Your Honor, is what is noncommercial? Noncommercial is defined in the regulations as an activity that involves commercial or a paid service. In this case, we're not saying Mr. Scott is engaged. Hang on a second. Let me start it out this way then. If I want to go into the National Forest and I can't drive and I'm wealthy enough that I have someone who drives me everywhere, he or she is on my payroll as a permanent employee, and I pay that person whether he or she drives me to the grocery store or into the National Forest. That person drives me into the National Forest. Is that commercial or noncommercial activity? It may not be noncommercial activity under the regulations. Can you do it without a double negative? I'm sorry, Your Honor, but the relevant definition is noncommercial, not commercial. We did not ñ no one determined that Mr. Scott's activity was in fact commercial. He was denied an exemption. Well, it sounds to me as though it occupies the universe to do the commercial or noncommercial, but I'll do the negative if you like. I mean, tell me why driving in there with my own private driver is not noncommercial. Noncommercial activities do not ñ a noncommercial activity has to have no association with a paid service. For example, yours is the extreme example and I don't have it ñ Extreme example? It seems pretty easy. Lots of people have drivers, and are you saying that somebody driving you into the National Forest in the circumstance, is that commercial or noncommercial in your view? I do not believe that the United States Forest Service would consider that to be a commercial activity, but that's not the question in this case. Well, tell me why not, because if that is noncommercial activity, I have trouble understanding why this is commercial activity when this is a paid pilot who flies him to the grocery store or wherever else he wants to go. He's on the payroll, he's on the permanent payroll, and he's paid to pilot him wherever he goes. If the paid associate provides transportation into the back country, as would a guiding service, the Forest Service looks at that differently from where quiet, undisruptive activity takes place by the recreationist. I understand that perfectly. It's obvious from the record in this case they look at it differently, but I'm having trouble determining why it is different in its commercial character. In this case, the Forest Service gave two reasons why this was not noncommercial recreational activity. It is neither noncommercial nor recreational. If you'd like me to address only the noncommercial aspect of that. I'm happy to have both. Right. All right. You're in trouble on recreational, in my view, too, because you've shared clearly when you grant the permit to Sun Valley, saying this is approved recreational activity. In that case, Your Honor, Sun Valley isn't engaged in recreation at all, and no one contends that they are. They are providing a recreational activity, and the Forest Service has issued the permit in order for the forest to make that activity available, which it is, to all users of the forest, including Mr. Scott. The denial of Mr. Scott's permit, on the other hand, would have no impact on the rest of the public and simply would avoid the negative impacts of landing helicopters in the forest, while allowing everyone who wishes to to continue engaging in backcountry helicopters. So your argument is that part of the consideration was the benefit to the public. Absolutely, Your Honor. Which lays in favor of Sun Valley and not in favor of Mr. Scott, because it's purely a personal, for him and his friends, personal excursions that he's doing for him and his friends. And so you're balancing the disturbance to the forest and the benefit to the public. Exactly. Just like the Everett case in the D.C. Circuit, Your Honor. In that case, a recreationist sought to bring his helicopter onto federal property in order to access his summer home. That permit was also denied, just like Mr. Scott's. My problem is not that you can't deny the permit. My problem is that you said this doesn't even meet the criteria for processing it as a permit application, which is what's happened here. I mean, there may be good reasons to say we're going to process this as a permit application, we're going to try and decide whether it meets the public interest in these various ways, and maybe the Forest Service will then come up with a series of rationales as to why Sun Valley is providing a service not only to the general public who are the skiers, but also to the Forest Service in providing sort of avalanche spotting and all the other things that they might do. I mean, that's an entirely different basis from the decision that we have here in front of us. I disagree with that, Your Honor. The Forest Service has effectively adopted a two-staged permit application process. And Mr. Scott has not made it past the first stage. Correct. But he has received full consideration of his proposal at that stage. And the Forest Service's discretion to deny the permit was fully explained on the basis of very reasonable criteria, which were reasonably applied to his proposal. So the fact that the Forest Service then calls the next stage the application processing stage, rather than the proposal consideration stage, really has no effect on whether he has been given adequate consideration for his request. You know, I think I have to disagree with you on that, because it's quite clear that the two stages involve very different processes. The first stage, if you fail at the first stage, you don't get to discuss what you might be able to do to mitigate things. But if you get past the first stage and you're actually getting your permit application processed, you have at least an opportunity to satisfy objections from the Forest Service and so on. You may not satisfy them, but you at least have an opportunity to address the criteria, to say, well, listen, I understand that Sun Valley does X, Y, and Z, and you like that. Well, I can do X, Y, and Z plus ABC, or I can't do Y, but I can do, you know, that process never happened. No, that's correct, Your Honor. As Supervisor Colmeyer explained, the Forest Service receives innumerable unsolicited permit requests, and where it is we're in the discretion of the Forest Service, it appears that a request is simply not within the criteria for any kind of consideration.  Because it is for an exclusive use of public property that has known adverse impacts with no public benefit associated with it. And that may be right, but where is that on the list of criteria that allows you to eliminate the person at the first stage? Those criteria include its consistency with the management of the area. Here it's a roadless area that's closed to aircraft. Unless there's a permit. Now, obviously, we do grant permits because we have Sun Valley. That's correct, Your Honor, but it's clear that the management of the area, which is a roadless area managed for recreation and wildlife, is not consistent with additional helicopter landings. Now, how do I know that?  Sun Valley does 49 days on average per year. Mr. Scott would like to do 30 more. The question is whether or not it's appropriate. Up to 30 more, yeah, yeah, sure. Whether it's appropriate for the Forest Service to limit the impacts on the forest to those that have already been reviewed or to think about maybe adding half again. Well, you know, that seems to me a perfectly sensible and maybe entirely justifiable rationale, but I don't see that that's the rationale under your own regulations that can be used to deny it at the first stage. Well, the criteria also include public safety, which is obviously at issue when there are additional helicopter landings under consideration in areas of the forest where recreationists are the primary users. But, of course, the checklist filled out in the initial denial said public safety concerns were satisfied. Supervisor Kohlmeyer said the opposite. And where does she say it and how does she say it? At page 45 of the record. The excerpt of the record or the supplemental? The supplemental excerpt. I apologize, Your Honor. I've got her letter in front of me, okay? So is that what we're working on? Yeah. It's about two-thirds of the way down the page. Which page of the letter? I may be working off a different page. Oh, I'm sorry. It's page 5 of the letter at page 44 of the supplemental excerpt. Okay, I'm with you. Okay. It says part of the analysis evaluated the ability of the area to tolerate the potential adverse impacts of a helicopter ski operation and the forest service. Oh, excuse me. Finally, the authorization. Finally, the authorization also addressed clients and public safety. That was the sentence after the one I started reading. I apologize. For the same reason that helicopter skiing authorizations are not authorized to operate outside of those restrictions, it would not be appropriate to authorize additional private or personal helicopter landings in the area. Allowing such additional use would cause unacceptable risks as determined by the analysis for authorization of the Sun Valley operation. So she's given a thorough consideration to those very criteria and has explained them to Mr. Scott who, as she explains, can participate in this activity by going through the Sun Valley operation that is offered on the forest. Let me ask you this. Do you agree with opposing counsel's position that Ms. Kohlmeier did not have jurisdiction to address these issues? Absolutely not, Your Honor. She is the authorized officer. She has the authority to consider permits and can delegate that to the district ranger. In this case, Mr. Scott is simply complaining that he got reconsideration that he asked for. And if there's a discrepancy between the person who does the initial screening and the forest supervisor, which one has the final say? Well, the forest supervisor has spoken for the Forest Service in this case, certainly, and she is the higher ranking officer and she gave reconsideration to this permit request. In her letter, she explains thoroughly all of the rationale that would, of course, be applied if the case were remanded to the Forest Service. And under the Administrative Procedure Act, the harmless error rule is to be taken into account. So the request for this to be set aside doesn't lead to any meaningful relief that is discernible here, since the Forest Service's rationale is reasonable, applies the appropriate criteria, and would be highly unlikely to be different on the second go-round. One of the things I'm having trouble with this case is it's pretty clear from the exchange of e-mails and so on under the record that from the outset the Forest Service just didn't like this guy. How come? What's going on here? I don't believe that's the case, Your Honor, but what the Forest Service does not like is the idea of unregulated helicopter landings in the backcountry. You mentioned in the letter private and personal, yet the district court went off more on commercial and non-commercial. I mean, you're telling me that if it were truly a commercial venture that Mr. Scott was taking and he could show that he could do a better job of servicing the public and having a better operation, he could fairly compete against Sun Valley in the commercial realm, but he's too private and personal. I can't say that that's the case, Your Honor. I believe that if he were another commercial operator coming in and Sun Valley was already in place, it's unlikely that the Forest Service would consider an application for additional services that are not needed. Those services are being provided, that activity. In the careful balancing that goes on in forest planning, the Forest Service doesn't just take all comers for new concessions to do the same activities in the same percentiles. But it's not really the commercial nature, then, of Mr. Scott's application. It's the fact that anyone who applies other than what you have there already is going to overburden the forest in the agency's opinion. I believe that that is the import of the closure order, that the Forest Service has taken the policy position or taken the planning action to carefully limit the amount of impact on this area from motorized vehicles and particularly from aircraft. So the permit process is really an exception to a general proposition that the Forest Service should be closed to helicopters. Correct, Your Honor. In the presence of the closure order, what Mr. Scott needed to be applying for, in effect, was an exception to the closure, an exemption from the closure, as opposed to just an ordinary special use permit. Of course, that process is the special use permit process in either case, but here the Forest Service has made clear that permits are not favored in this area because of the management priorities on it and the existing uses. Okay. And I see that I'm way over my time and I apologize. Are there no further questions? We took you there. That's not your fault. Response? Tell us why they don't like Mr. Scott. Well, you know, Mr. Scott is a very nice gentleman. And honestly, I don't think the Forest Service has something against Mr. Scott. He's a great recreationist, supports many causes for conservation in the state of Idaho. It's not about that. Okay. I think what it is is that they just don't like helicopters. It's more about that. What we have is in- What's wrong with that? What's wrong with wanting to preserve the pristine nature of the back country? Well, because- Why is that arbitrary? The Forest Service has rules and regulations that allow helisking. Helisking is a recreational activity in the national forests. You will see in Supervisor Kohlmeier's letter, she says, Well, you can go to the Minidoka District, which is part of the Sawtooth National Forest, and it's not a commercial- You can just do it there. It's a recreational activity there. You can go to the Boise National Forest. We don't limit it there. So the way the Forest Service has historically interpreted it is helisking is a recreational activity. You don't need a permit for it unless you run into something like this where there's a closure order. And now, in her letter, she says you're a commercial activity. But it's not a commercial activity in the other district or in the other forests. But even if your client is engaged in a non-commercial activity, nonetheless, the closure order says, commercial or not, he needs some sort of a permit or a special use permit or an exception, whatever the labels have been floating around here. And they say, We're not giving you a permit. And we applied for it, and they said, We're sending it back because of this circular logic that was in the closure order. And that's when the district court says, That's not fair, especially when you grant another application to someone else. And we look at the environmental assessment and all the approval process for that other application, and they're glowing about it. But bottom line, district court said not arbitrary. It said not arbitrary, and the court made a mistake because of the fact that the court felt that Supervisor Kohlmeyer's letter cured the defect when, in fact, the government admitted in their answer to the complaint that she did not substantively review it herself, that all she was doing was saying what her line officer concluded when he did his first level screening criteria. And I think as the court has said, when you look at his screening criteria, you see we passed every one of them. But she's his supervisor. She's his supervisor, so she is the one who has the final authority over him. If he makes a decision, she can countermand that decision. So why can't she cure any defects and give the reasoning of the Forest Service? My response would be that she didn't. She didn't review it on the merits. They've admitted that she didn't. She sent it back, and what she said was, and it's very clear in her letter, this is what my line officer concluded. We get the administrative record. Well, this is what he should have concluded. She didn't say this is what he concluded. She said here are the reasons that he made the determination. Which they sometimes say about my orders, too. This is what I meant. This is what he should have said. Well, and all my client really wanted was a fair, impartial, honest review of his application, because we know that, in fact, there are no true justifiable reasons to prohibit it in the Fairfield District where he has a home and allow it in all the other areas. But under the standard we review, arbitrary and capricious, it's extremely difficult for you to prevail if the Forest Service is anchoring its decisions to the Forest Management Plan and all of the... That's right. They have broad discretion. We read all the cases, and it's very clear that the federal courts are not there to run the forests. And we understand that. But when you have line officers who review your application and say, sounds good, you pass, you pass, you pass, although we've got a closure order, I'm sorry. And court tells us all the time that we messed up when we think we've done the right thing. And so we live with that. And if the forest ranger made a mistake and his supervisor says you were wrong and corrects it, why is that arbitrary? I don't understand that argument. But that isn't what happened here. The factual posture of this case, the administrative record that's before you, shows that the line officer said that we passed. It goes to her. She says, I'm not going to rule on it. The government admits it in their answer. We didn't say that she, Supervisor Cobar, did not substantively review the application. They admitted that. The opposing counsel did not agree with you on that point. She got the answer in the complaint. It's in the record. I mean, I looked at that before I came because I said, why would they argue that she substantively reviewed it when they admitted that she didn't? And when you read her letter, all she's doing is saying that my line officer, who is the first line officer? Well, I think there's some confusion in the initial screening and then the subsequent screening, the second step. And I think everybody agrees it didn't go to the second step because the Forest Service, via Ms. Kohlmeier, said it didn't pass the first initial screening. So I'm taking that as being what was meant by the fact that she didn't review it substantively because it never got to the second step. One last point on the commercial aspect, which I do want to emphasize, is that this whole thing about commercial, I think, was the district court's way of kind of weaving through this forest of contradictions and what we would call characterized arbitrariness. Mr. Scott's activities were not commercial. The test is a primary purpose. There is no way that his activity was a primary purpose to do this. And also the conclusive proof that it's not commercial is the fact that the Forest Service allows heli-skiing in the other forests and do not classify it as commercial. It's purely recreational, which they do without a permit. And finally, just as a factual matter, my client has been doing this for 20 years and all the national forest has never seen one other private heli-skier. So this whole thing about, I mean. Okay, got it. Okay. Thank you. Thanks, Scott. The case of Scott versus the United States now submitted for decision. Thank both sides for their arguments. Thank you for your patience. We are now ready to hear Hapner versus Tidwell. We accelerated the briefing in this case, but we decelerated the oral argument putting it at the end of the calendar today, for which we apologize.
judges: Lasnik, Fletcher W. , Rawlinson